Buseck, Appellant, v. N. Y. C. & St. L. Ry. Co.

Argued April 15, 1930.

Before Trexler, P. J., Linn, Gaw-
throp, Cunningham and Baldrige, JJ.

J. O. *Wait* of *Reed, Wait & Spofford,* for appellant.
—Contingencies not provided against in a written con-
tract will not excuse performance thereof: Common-
wealth v. Neff, 271 Pa. 312; Corona C. & C. Co. v.
Dickinson et al., 261 Pa. 592.

*Charles H. English* of *English, Quinn, Leemhuis &
Tayntor,* for appellee.

Opinion by Linn, J., July 10, 1930:

The chancellor found that the wrong,—stopping a
culvert—was not done by defendant, but by another;

and therefore refused damages. The only complaint is of that refusal. Surface water drained northward naturally from plaintiff's farm toward defendant's railroad where it passed under the railroad by a drain that continued under the railroad of another company, the Lake Shore Railroad, (not a party to the suit) and then discharged and flowed over the surface of the land of one Herman and into a creek called Tracy Run. Defendant's railroad is the northern boundary of plaintiff's land for over 2000 feet; the Lake Shore Railroad is the northern boundary of defendant's property, and Herman's farm is the northern boundary of the Lake Shore right of way.

Plaintiff's bill averred breach of a real covenant subject to which defendant held its right of way; that defendant had permitted a water course, which would carry off surface water from plaintiff's farm, to become stopped; that his field was flooded, and that damage resulted. He prayed for mandatory injunction requiring defendant to remove the obstacle to surface drainage and for damages.

In 1881 Thomas McKee conveyed to defendant the land on which its railroad is constructed by deed containing this covenant: "Said railway company shall build and forever maintain a good fence on the south line of said strip of land. They shall forever maintain a good ditch along the south line of the railway sufficient to carry off the water flowing from the said farm." That covenant runs with the land: Kelly v. Nypano R. R., 200 Pa. 229; Beedy v. Nypano R. R., 250 Pa. 51. The railroad constructed and maintained such a ditch until the drainage was stopped as hereinafter recited. In 1890 Thomas McKee conveyed part of his farm adjoining defendant's railroad to the plaintiff. There seems to have been no trouble with the drainage until 1904 or 1905, at which time, the record shows, the Lake Shore road, in constructing two additional tracks, was preliminarily restrained at the instance of

Herman, the adjoining land owner on the north, from extending the existing culvert under its new tracks at the point where the surface water from plaintiff's farm had formerly been carried under both railroads as has been stated. Compliance with this preliminary injunction (which was effective until final hearing held in 1925) prohibited the Lake Shore Company from extending the drain or culvert under its new tracks; the widened railway was therefore constructed without extending the culvert; closing it stopped the water from flowing from the ditch along plaintiff's farm and permitted it to collect in the low parts of a nine and a half acre field and destroyed it for agricultural purposes when flooded. While that condition was created in 1904, it seems to have remained without further action by plaintiff until he filed this bill in August, 1915. Eight years elapsed before the case was heard on bill, answer and proofs. The learned chancellor filed his opinion and decree nisi July 27, 1925. In the opinion he stated: "The case of Peter Herman v. the Lake Shore & Michigan Southern Railroad, No. 4, May T., 1904, in equity, was also heard at about the same time and in the final order the injunction was dissolved and that railroad ordered to extend its culvert through its entire embankment to provide drainage for the land to the south. This order has been complied with." The effect of complying with the order in Herman's case was to restore the flow of surface water from plaintiff's farm as it had flowed before 1904. Concluding that the damage was caused, not by defendant, but by Lake Shore Company, the court held that defendant was not responsible in damages to plaintiff because the tort was not committed by defendant. Plaintiff filed four exceptions below, only one of which is now material,—that complaining of the disallowance of damages. These exceptions were dismissed in July, 1929. In the opinion then filed it is stated that since July 27, 1925, the surface water has been carried from

plaintiff's farm in the ditch along the railroad to the outlet under defendant's railroad and thence under the Lake Shore road and that there had been no damage to plaintiff's farm since.

Plaintiff does not contend, as we understand the argument made on his behalf, that defendant is responsible for the conduct of the Lake Shore road in stopping the flow under its tracks from the time of the Herman injunction, but does contend that the words of the covenant "to carry off all water flowing from plaintiff's farm," required defendant to dispose of the surface water at all hazard. This contention disregards the physical conditions confronting the parties when McKee conveyed to defendant in 1881, and does not attribute sufficient weight to the contemporary construction (Beedy v. R. R. Co., 250 Pa. 51, 57) of the covenant made by the parties up to 1890 when plaintiff bought the land and thereafter during his ownership and during his residence on the farm until 1904. Plaintiff's contention would completely ignore these applicable rules of construction; for his contention is that as Tracy Run, at a point 2700 feet from his farm, was at a lower level than his farm, the railroad company was bound not only to make a ditch along the northern boundary of plaintiff's farm to carry off this surface water as has been described, but that if, by the act of a third party, the flow of surface water was impeded in the course it would naturally take, and until then had taken, the defendant must construct another water-way in the opposite direction along property adjoining plaintiff's in such way that the water would flow into Tracy Run, notwithstanding that the ground in that direction is higher than plaintiff's land. The chancellor found as a fact that at the point where such discharge would take place, Tracy Run is a shallow stream flowing over land almost level that is flooded in wet weather, and concluded that defendant had no right to collect the

surface drainage from plaintiff's farm and discharge it by means of such an artificial channel into Tracy Run at the point proposed: see Miller v. Laubach, 47 Pa. 154.

As the proximate cause of the flood was the stoppage by Lake Shore road and not by the defendant, and as the plain meaning of the covenant construed in the light of the conditions surrounding the parties in 1881, and as interpreted by them for many years, is as has been stated, plaintiff has not shown that he is entitled to recover damages.

The assignments of error are overruled and the appeal is dismissed at the costs of appellant.