## Beedy *v.* Nypano Railroad Company, Appellant.

*Contracts—Deed-polls — Covenants binding on grantee — Ambiguous expressions—Construction by the parties—Equity—Specific performance.*

1. The general rule is that a deed-poll when accepted by the grantee becomes the mutual act of the parties the same as if signed

by both. By accepting a deed-poll with all its terms and conditions and entering into possession, the grantee takes the property subject to the burdens imposed upon it by the grant and is bound to perform the conditions therein stipulated although he has not signed the deed.

2. If the language of a covenant be ambiguous, the construction placed thereon by the parties is the best evidence of their intention even though it might not be the construction which from inspection of the writing alone would be accepted.

3. A railroad company acquired a strip of farm land for the purpose of improving its road by a deed-poll which provided that "in case the wells and springs situate upon the premises of the first parties shall become useless or impaired by reason of the construction of any railroad on the land hereby conveyed, then......the said party of the second part......agrees with the parties of the first part......that the said party of the second part...... shall and will immediately enter upon the remaining property of the first parties and at a point or points designated by them, or either of them, drill new wells sufficient in number and size to furnish a sufficient quantity and a good quality of water to meet the needs and demands of the houses and barns of the parties of the first part." By reason of an excavation on the land granted the railroad company, the well and the spring which supplied the grantors' dwelling house with water were rendered useless. Another well and spring distant from the house supplied a sufficient quantity of water for the needs of the grantors' houses and barn, but the quality of the water rendered it unfit for household use. The defendant company made two efforts to dig another well near the grantors' house to supply it with water but failed. In a suit in equity to compel the performance of the covenants of the deed, defendant contended that in view of the fact that at the time of the covenant there was another well at a remote part of the farm producing water of the necessary quantity and quality, plaintiff could have no remedy on the covenant so long as that supply was available. *Held,* the lower court did not err in granting the relief prayed for.

Argued April 27, 1915. Appeal, No. 163, Jan. T., 1915, by defendant, from decree of C. P. Crawford Co., Sept. T., 1913, No. 2, in equity, requiring specific performance of the covenants of a deed, in case of W. R. Beedy v. Nypano Railroad Company. Before MESTREZAT, ELKIN, STEWART, MOSCHZISKER and FRAZER, JJ. Affirmed.

Bill in equity to enforce the covenants of a deed.  Before PRATHER, P. J.

The opinion of the Supreme Court states the facts.

The court granted the relief prayed for.  Defendant appealed.

*Errors assigned* were various findings of fact and law of the trial judge and the decree of the court.

*Geo. F. Davenport;* with him *W. S. Throop,* for appellant.—The deed was not signed or sealed by the defendant and therefore the defendant is not bound by the covenants therein:  Maule v. Weaver, 7 Pa. 329;  Schoenberger's Executors v. Hay, 40 Pa. 132;  DeBolle v. Penna. Insurance Company, 4 Wharton 68.

As there remains a sufficient and suitable supply of water for plaintiff's uses, there has been no such breach of the covenant as will entitle the plaintiff to a decree.

*C. Victor Johnson,* with him *John O. McClintock,* for appellee.—The duty to be performed by the defendant was two-fold:—to furnish water in sufficient quantity, and good quality for both the houses and barns of the plaintiff; if it failed to furnish water sufficient in quantity, or if furnished in sufficient quantity, the water was not of a good quality, the defendant failed to perform the covenants of the deed.

A deed-poll when accepted by the grantee becomes the mutual act of the parties and a stipulation therein on the part of the grantee to be performed binds him:  Poage v. Wabash, St. Louis & Pacific Ry. Co., 24 Mo. App. 199;  Spaulding v. Hallenbeck, 35 N. Y. 204;  Kelly v. Nypano R. R. Co., 23 Pa. C. C. 177, 200 Pa. 229;  Blood v. Crew-Levick Co., 177 Pa. 606;  Sexauer v. Wilson, 136 Iowa 357, 113 N. W. Repr. 941, 14 L. R. A. (N. S.) 185;  Atlanta, Knoxville & Northern Ry. Co. v. McKinney, 124 Ga. 929, 53 S. E. Repr. 701, 6 L. R. A. (N. S.) 436;  Ross v. Purse, 17 Colo. 24, 28 Pac. Repr. 473.

OPINION BY MR. JUSTICE FRAZER, May 26, 1915:

Defendant owns and operates a railroad running through Crawford County and through plaintiff's farm. In 1912, desiring to widen and straighten and otherwise improve its roadbed, defendant purchased from plaintiff a strip of land through his farm about 265 feet in width; the deed therefor, which was executed by plaintiff and his wife, contained, among other provisions, the following clause: "In case the wells and springs situate upon the premises of the first parties shall become useless or impaired by reason of the construction of any railroad on the lands hereby conveyed, then in such case the said party of the second part, for itself, its successors and assigns, agrees with the said parties of the first part, their heirs, executors, administrators and assigns, that it, the said party of the second part, its successors and assigns, shall and will immediately enter upon the remaining property of the first parties, and, at a point or points designated by them or either of them, drill new wells sufficient in number and size to furnish a sufficient quantity and a good quality of water to meet the needs and demands of the houses and barns of the parties of the first part." At the time the deed was executed, the buildings on plaintiff's farm consisted of a fourteen-room dwelling, a tenant house, two barns and other outbuildings. The water was supplied from two wells and two springs. One well located at the dwelling house supplied water for general household use and was of excellent quality and of ample quantity for present and future needs of the house for domestic purposes. Another well was located in the barn, and this, with the two springs, furnished sufficient water for general farm and stock use.

In the construction of its new road-bed through plaintiff's farm, defendant excavated to a depth of about seventy feet; this excavation coming within a few hundred feet of the well, which supplied water for domestic purposes, located at plaintiff's dwelling house. This

well was about twenty-one feet deep, and, as a result of defendant's excavating, its source of supply of water, and also that of one of the springs, was cut off which not only impaired but rendered both useless. The quantity of water at the well located in the barn and also at the other spring, has not been affected, and both continue to furnish sufficient water to supply the needs of plaintiff's houses and barn; the quality of this water, however, is such as to render it generally unfit for household uses.

In the fall of 1912, at the request of plaintiff who had filed a bill in equity to compel the performance of the covenant above referred to, defendant entered upon plaintiff's property and drilled a well to the depth of fifty-eight feet adjoining plaintiff's dwelling, which failed to procure a sufficient quantity of water suitable for domestic use. In June, 1913, the present bill was filed, and in the spring of 1914, defendant again attempted to comply with the conditions of the deed by drilling to a depth of one hundred and fifty-eight feet the well which had been previously started without, however, securing an additional supply or better quality of water.

After hearing the testimony in the case, a decree was entered by the court below directing defendant to drill on plaintiff's land at such points as might be designated by him such well or wells of such number and size as to furnish water in sufficient quantity and of good quality to meet the needs and demands of plaintiff's houses. From this order defendant appealed and now contends that since the wells and springs on plaintiff's farm were so grouped together in the covenant sued upon, and since they, as a group, still furnish sufficient water and of the same quality as was required by the plaintiff's needs at the time the deed was executed, therefore there has been no breach of the covenant sued upon, and further that a court of equity is without jurisdiction of the matter.

Viewing the covenant in the light of the circumstances of the parties, there can be no doubt as to its construc-

tion.  The location of the new road was, of course, fixed before the deed was executed.  The probable result of an excavation in such close proximity to the well located at plaintiff's dwelling was anticipated, and it was clearly for the protection of that well in particular, which supplied practically the only pure drinking water, that the covenant was inserted.  It would require a strained construction to say that, if at the time the covenant was made there was another well at some remote part of the farm producing water sufficient in both quantity and quality to render it suitable for domestic purposes, plaintiff should be obliged to transport the water of that well to his dwelling, and continue to do so as long as it was sufficient for the purpose notwithstanding the covenant on the part of defendant to drill new wells in sufficient number and size to furnish a proper quantity and quality of water for household use "in case the wells and springs situate upon the premises should become useless or impaired by reason of the construction of the railroad."  Such interpretation would render the covenant useless, because of the improbability of the excavation in any way affecting a well or spring located at some distance from the dwelling.  The covenant in effect is one which requires that plaintiff's water supply be not substantially interfered with in any manner by the work done by defendant, and, if it is, that defendant will repair the damage as required under its covenant.

It is immaterial that the deed was not signed or sealed by defendant, the grantee.  Having accepted the deed with all its terms and conditions and entered into possession, it took the property subject to the burden imposed upon it and is bound to perform the conditions therein stipulated.  The general rule is that a deed poll when accepted by the grantee becomes the mutual act of the parties, the same as if signed by both: Blood v. Crew-Levick Co., 177 Pa. 606.  A covenant of this nature is one running with the land: Kelly v. Nypano R. R. Co., 200 Pa. 229.  Nevertheless if in this case it would not

run with the land, the proceeding is between the original parties to the deed, and the question, therefore, becomes immaterial.

· If the language of the covenant be considered ambiguous, the parties themselves have put their own construction upon it by what has been done in the past.  Two attempts have been made by defendant to supply a new well at plaintiff's dwelling house.  This is the best evidence of the intention of the parties, and the courts will adopt such construction:  Coleman v. Grubb, 23 Pa. 393; Peoples Natural Gas Co. v. Braddock Wire Co., 155 Pa. 22.  Even though it might not be the one which from inspection of the writing alone would be accepted:  Wright v. Monongahela Natural Gas Co., 2 Pa. Superior Ct. 219.

The Act of June 7, 1907, P. L. 440, 5 Purd. 5465, provides that when a bill in equity has been filed and defendant desires to question the jurisdiction of the court on the ground that the proceeding should be at law, he must do so by demurrer or answer.  No demurrer was filed in the court below, nor does the answer object to the form of proceeding, or allege that equity has no jurisdiction.  It is, therefore, unnecessary to discuss this question.

The decree is affirmed at the cost of appellant.