SOUTH BUFFALO STORES, INC., Plaintiff, *v.* W. T. GRANT COMPANY and Others, Defendants.

Supreme Court, Erie County, October 8, 1934.

*Jadd & Tully* [*Sidney B. Pfeifer* of counsel], for the plaintiff.

*Wanamaker, Klocke, Martina & Rovner*, for the defendant W. T. Grant Company.

*J. Edmund Kelly*, for the defendant Fred A. Kreitner and another.

MALONEY, J. The plaintiff herein demands judgment against the defendants that they be restrained by permanent injunction from conducting a shoe department in connection with the defendant Grant's general business, which is that of a five-cent to a dollar retail department store.

Defendant Kreitner and defendant Shea Realty Corporation on December 10, 1928, were the owners of record of five parcels of land or 177 feet of frontage, situate on the northwest side of Seneca street between Buffum and Zittel streets, in the city of Buffalo, N. Y., defendant Kreitner owning three of the five parcels and defendant Shea Realty Corporation the remaining two.

June 3, 1929, defendant Kreitner conveyed the three parcels aforesaid to defendant Shea Realty Corporation. The holdings of Shea Realty Corporation then consisted of the frontage aforesaid and more in the block aforesaid. A building was subsequently erected by defendant Shea Realty Corporation upon such frontage consisting of a theatre, the entrance thereto and various stores fronting on Seneca street, including the stores of plaintiff and defendant Grant Company.

Prior to the erection of such building and on December 10, 1928, the defendant Fred A. Kreitner entered into a lease with the plaintiff of the premises No. 2180 Seneca street in the city of Buffalo, N. Y. The premises leased were to become and subsequently did become part of building erected on the 177 feet and more frontage, owned by the defendant Shea Realty Corporation. The term was for fifteen years, " to commence on the day of completion and occupancy," which was November 1, 1929. The lease contained the restricted covenant, viz.: " The first party, his grantees, successors or assigns, covenant and agree with the second party hereto that they will not lease or rent any store they now own or possess or may hereafter own or acquire on the northeast side of Seneca Street between Buffum and Zittel Streets as a retail, wholesale, or both, shoe store or shoe repairing store, and it is further agreed that no other store owned or possessed now or hereafter by the party of the first part, shall sell either leather or rubber footwear of any kind, and that there shall not be any soft drink establishment or saloon on either side of the aforesaid store leased herein."

A usage clause therein limits plaintiff as to the usage thereof, viz.: "A retail or wholesale or shoe repair store."

March 1, 1929, Shea Realty Corporation leased the premises known as 2182–2184 Seneca street to the defendant W. T. Grant Company for a term of twenty-five years. The leased premises were to become and subsequently did become part of a building

erected on the 177 feet of frontage and more on Seneca street owned by Shea Corporation. The lease contained the following covenants:

" *Twenty-sixth.* The tenant further agrees not to use or permit to be used the whole or any portion of the demised premises for the purpose of carrying on a retail or wholesale, or both, shoe store, or shoe repair store, or for selling either leather or rubber footwear of any kind, or for carrying on any soft drink establishment or saloon, or for the purpose of selling meats or groceries, excepting such groceries as are handled by the tenant herein."

" The restrictions as to the sale of leather and rubber footwear and the selling of either rubber or leather footwear of any kind and the carrying on of a retail or wholesale shoe store, or shoe repair store shall terminate June 1, 1944. In the event that a certain lease now existing between the landlord herein and South Buffalo Stores, Inc., shall for any reason terminate prior to June 1, 1944, then the said restriction first above mentioned shall terminate with said lease."

" If the tenant secures a waiver of any of the foregoing restrictions from the proper party in interest, it may use the demised premises in accordance with the rights granted in such waiver," and also the following:

" *Eighth.* The Landlord covenants that it will not at any time during the term hereby demised let or consent to the subletting by any tenant of the Landlord, of any portion of the building on Seneca Street of which the demised premises from part, for a 5¢ to $1.00 department store similar to that operated by the Tenant, without the prior written consent of the Tenant. It is understood that this restriction does not apply to the operation of a store in any portion of the building on Seneca Street of which the demised premises form part, by the F. W. Woolworth Co."

April 6, 1934, a further lease or agreement was entered into between the Shea Realty Corporation and the W. T. Grant Company, containing the following covenants:

" The Tenant agrees not to use or permit to be used the whole or any portion of the demised premises nor to sublet the same for the purpose of carrying on either a retail and/or wholesale shoe store or shoe repair store or for selling either leather or rubber footwear of any kind. The Tenant further agrees not to sublet the whole or any portion of the demised premises for the purpose of conducting therein a 5¢ to 10¢ store; a 5¢ to 25¢ store or a 5¢ to $1.00 store, without the prior written consent of the landlord."

" *Ninth.* The Landlord covenants that it will not at any time during the term hereby demised let or consent to the subletting

by any tenant of the landlord of any portion of the building on Seneca Street of which the demised premises form part for a 5¢ to $1.00 department store similar to that operated by the Tenant without the prior written consent of the Tenant. It is understood that this restriction does not apply to the operator of a store in any portion of the building on Seneca Street of which the demised premises form part, by the F. W. Woolworth Co."

"*Twenty-seventh.* No modification of this lease shall be binding unless in writing and executed and acknowledged in due form for recording." } MODIFICATION.

Notwithstanding the last above covenant, Shea Realty Corporation and W. T. Grant Company agreed as follows:

"*April* 6, 1934.

" Re 2180–2182–2184 Seneca St., Buffalo, New York.

" W. T. GRANT Co.,
1441 Broadway,
New York, N. Y.

" GENTLEMEN: Under the lease of the above premises to you, dated March 1, 1929, as modified by agreement dated April 6th, 1934, you are not permitted to use any portion of the said premises for the purpose of carrying on the sale of rubber or leather shoes or footwear of any kind.

" If you will agree to indemnify and save us harmless against any loss or damage caused by your sale of such footwear, by indorsing your consent below, we will permit you to sell rubber and/or l eather footwear, of any kind on the said premises, throughout the term of your lease.

" Yours truly,
" SHEA REALTY CORPORATION,
" By F. R. KREITNER, *Treasurer.*

" We hereby consent to the above and agree to so indemnify you.
" Dated: April 12, 1934.
" W. T. GRANT COMPANY,
" By R. W. STORY, *Secretary.*"

During the year of 1932 W. T. Grant Company displayed shoes for sale in the show window of the store leased by it and located in the same building as that of plaintiff's store. Upon complaint of plaintiff, defendant W. T. Grant Company discontinued such shoe display.

June 8, 1934, the president of plaintiff observed a display of footwear in W. T. Grant Company's show window, located as afore-

said, and wrote said defendant under date of June 9, 1934, and received defendant W. T. Grant Company's reply, viz.:

*"June 9, 1934.*

" W. T. GRANT CO.
   1441 Broadway,
     New York City.

" GENTLEMEN: As you undoubtedly know, our lease for the premises 2180 Seneca Street, Buffalo, New York, which is located in the so-called Shea's Theater Building in which is also located 2184 Seneca Street, operated by you, prohibits the sale by you of rubber or leather footwear of any kind.

" Yesterday your store at said 2184 Seneca Street commenced to display leather footwear for sale. We hereby request that such display and sale of footwear be discontinued at once.

" It is our understanding that your lease of said 2184 Seneca Street prohibits the sale of such footwear.

       " Yours very truly,
      " SOUTH BUFFALO STORES, INC.,
" HJ:AS         " By.................. "

*" June 14, 1934.*
  " Re 2184 Seneca Street. Buffalo, New York.
" SOUTH BUFFALO STORES, INC.
   2180 Seneca Street,
     Buffalo, New York.

" GENTLEMEN: We acknowledge receipt of your letter of June 9, 1934.

" We are advised by our attorneys that we are fully within our rights in selling, in conjunction with our regular line of merchandise, a line of footwear. We have received permission to do so from our landlord, Shea Realty Corporation.

" We therefore intend to go forward with the sale of footwear as an incident to our general line of merchandise.

       " Yours very truly,
    " W. T. GRANT COMPANY,
     " By R. W. STORY, *Secretary."*

On June 16, 1934, the president of the plaintiff visited the Grant store and made certain observations with relation to the display and sale of footwear and at such time made a purchase of certain footwear.

The manager of Grant Company's store testified that on June 16, 1934, from nine A. M. and for a period of about four hours thereafter, the sale of footwear amounted to fifty-five dollars and eighty

cents. The shoe department occupied three per cent of the floor space of the leased premises and this department's average was seven per cent or eight per cent of the total sales of Grant stores. And further that twenty-eight different merchandising departments were located in the Seneca street store.

That prior to December 10, 1928, defendants Shea Realty Corporation and Fred A. Kreitner had determined to erect a building on the 177 feet of frontage and more in question; that defendant Fred A. Kreitner was then a director of the Shea Realty Corporation (then known as the Schaaf Realty Corporation).

Six and ninety-six one-hundredths feet of the store leased to Grant Company is located on a strip of land, the record title of which was, on the date of the making of the lease, in defendant Fred A. Kreitner. The rentals of the stores of the plaintiff and defendant W. T. Grant Company were paid continuously since occupancy to Shea Corporation. The leases of the plaintiff and defendant W. T. Grant Company were filed in the office of the county clerk of Erie county. Plaintiff's lease was so filed prior to the time the Grant lease was entered into.

The defendant Grant Company thereby was given constructive notice of the restrictive covenants in question, contained in plaintiff's lease. An examination of the record would have disclosed that the lease of plaintiff contained restrictive covenants affecting the premises leased by Grant Company, particularly in view of the fact that the strip six and ninety-six one-hundredths feet wide aforesaid, upon which part of the premises leased by Grant Company is located, was owned by defendant Kreitner. There is no basis to defendant's claim that constructive notice would apply, if at all, only as to that part of the leased premises located on the strip six and ninety-six one-hundredths feet in width, in which portion of the Grant store it is claimed no footwear was sold or offered for sale.

In effect the restrictive clause contained in plaintiff's lease was an easement.

"An easement in favor of, and for the benefit of lands owned by third persons, can be created by grant, and a covenant by the owner, upon a good consideration, to use, or to refrain from using, his premises in a particular manner, for the benefit of premises owned by the covenantor, is, in effect, the grant of an easement, and the right to the enjoyment of it will pass as appurtenant to the premises in respect of which it was created. Reciprocal easements of this character may be created upon the division and conveyances in severalty to different grantees of an entire tract, and they may be created by a reservation in a conveyance, *by a condition annexed*

*to a grant, or by a covenant, and even a parol agreement of the grantees.* (*Curtiss* v. *Ayrault,* 47 N. Y. 73; *Tallmadge* v. *East River Bank,* 26 id. 105; *Gibert* v. *Peteler,* 38 Barb. 488; affd., 38 N. Y. 165.) The right sought to be enforced here is an easement, or, as it is sometimes called, an amenity, and consists in restraining the owner from doing that with, and upon, his property which, but for the grant or covenant, he might lawfully have done, and hence is called a negative easement, as distinguished from that class of easements which compels the owner to suffer something to be done upon his property by another. (Wash. on Easements, 5.) Easements of all kinds may be created and exist in favor of any third person, irrespective of any privity of estate or community of interest between the parties; and, in this respect, there is no distinction between negative easements and those rights that are more generally known as easements as a way." (*Trustees of Columbia College* v. *Lynch,* 70 N. Y. 440, 447.) (See, also, *Spencer* v. *Lighthouse,* 114 App. Div. 591, cited in *Buffalo Academy of Sacred Heart* v. *Boehm Bros.,* 241 id. 578.) Such an easement is notice to the world, especially to whomsoever takes title to the property.

W. T. Grant Company, in addition to the constructive notice hereinbefore referred to, had actual notice of the covenants contained in plaintiff's lease with relation to the sale of footwear, etc., particularly in view of the fact that the lease of the plaintiff is specifically referred to in the Grant Company's lease, hereinbefore set out. The defendant Shea Realty Corporation recognized the easement created by its grantor, defendant Kreitner, who was then a director of and the treasurer of the Shea Corporation, and as an evidence of such recognition caused to be inserted the restrictive covenant as to the sale of footwear in its original lease with the defendant W. T. Grant Company.

The defendant Grant Company was fully cognizant of the fact that the leased premises was one of the stores to be erected in the building development on Seneca street, as its original lease specifically contained, as a part thereof, the plans and specifications of the premises leased. Again the original lease specifically restricted letting· or subletting or consenting to so do any portion of the building on Seneca street, of which the demised premises formed a part.

" The question whether a contract having relation to lands is personal, or whether it constitutes a charge upon the lands, obviously, must be determined by a consideration of the expressed intentions of the parties and of the existence of any interest in the land raised by force of its covenants. Words of grant are not essential to create the interest, and a covenant may be construed as grant." (*Mott* v. *Oppenheimer,* 135 N. Y. 312, 319, 320.)

The lease, dated April 6, 1934, between defendant Shea Corporation and W. T. Grant Company, does not in any manner affect the restrictive rights of the parties to this litigation as to the questions to be determined.

The original lessors were, it is apparent, engaged in a common enterprise and undertaking, viz., the erection of the building in question and the rental of the various stores to be located therein. The building as erected has a substantial frontage on Seneca street. Good business dictated the rental of the stores prior to the erection of the building. Restrictive covenants as a general rule are not only of advantage to the lessor but to the lessee. Higher rentals, longer term leases and a better type of tenant are an advantage to an owner and are of particular value to a lessee's business. The lessees herein have a measurable interest in the restrictive covenants contained in the lease of the other.

In my opinion the parties to this litigation, with full knowledge of the existence of such restrictive covenants in the leases in question, entered into the same.

The covenants contained in the various leases were observed by the parties to this litigation up to at least April 6, 1934.

It is my opinion that the plaintiff has a right in equity to enforce an incumbrance or equitable servitude, placed by the landlord defendant Kreitner upon his own property, for plaintiff's express benefit. Equitable servitudes have been enforced in numerous cases in this State. (*Booth* v. *Knipe,* 225 N. Y. 390; *Korn* v. *Campbell,* 192 id. 490; *Bull* v. *Burton,* 227 id. 101; *Waldorf-Astoria Segar Co.* v. *Salomon,* 109 App. Div. 65; affd., on opinion below, 184 N. Y. 584.)

If any point of distinction can be found between the *Waldorf Segar* case and the instant case, it is only that, as the opinion there mentions, the real defendant Acker, Merrall and Condit Company, had actual notice of the plaintiff's privilege, viz., restrictions in the use of the premises as against all parties other than plaintiff. In the instant case, in passing by the question whether the recording of the plaintiff's lease was not constructive notice to the world of his peculiar rights and the resultant restrictions upon others, it is to my mind decisive that plaintiff's equity against defendant is, if I may be permitted the term, even stronger than if the defendant had had actual notice, because the defendant had expressly covenanted to limit his use of the premises so as not to invade plaintiff's right therein.

This is a court of equity and equity must look to substance, not merely to the form. The court must consider Fred A. Kreitner,

John Schaaf and the Shea Realty Corporation one and the same with respect to the restricted covenants. (*Rubel Bros., Inc.,* v. *Dumont Coal & Ice Co., Inc.,* 200 App. Div. 135.)

The testimony of the manager of the defendant Grant's store admits no other interpretation than that the shoe department is a separate and distinct department in defendant Grant's store. (*Peoples Trust Co.* v. *Schultz N. & S. G. Co.,* 244 N. Y. 14.)

" It is idle to say that because the Acker, Merrall & Condit Company [the subsequent tenant] characterized its business as a wholesale and retail grocery business and sold groceries, wines and liquors in addition to cigars, it was not selling cigars, and that its lease of the store was not for the purpose of selling cigars. We think, therefore, the court below was entirely justified in finding that this lease to the Acker, Merrall & Condit Company was a violation by the defendant, Salomon, of the covenant contained in the lease to the plaintiff." (*Waldorf-Astoria Segar Co.* v. *Salomon,* 109 App. Div. 65; affd., 184 N. Y. 585.) (See, also, *Parker* v. *Levin,* 188 N. E. 502; *Baumann Co.* v. *Manwit Corp.,* 213 App. Div. 300.)

I am of the opinion that the lease entered into between the defendant Shea Realty Corporation and W. T. Grant Company, April 6, 1934, is effectively disposed of in the language used in *Aiello Bros.* v. *Saybrook Holding Corp.* (106 N. J. Eq. 3; 149 A. 587): " The tenant participated in the fraudulent letting with full notice of the complainant's covenant which it was in conscience bound to respect, not to violate. As to it the covenant not to let implied as well, not to use. Where conscience forbids equity enjoins."

For the reasons above stated, I am of the opinion that the plaintiff is entitled to a permanent injunction against the defendants herein for damages in the sum of fifty dollars against the Shea Realty Corporation and W. T. Grant Company, with costs, no damages against the defendant Fred A. Kreitner, and without costs as to him.