## Hoffman, Appellant, v. Rittenhouse.

Argued January 8, 1964. Before MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Howard Gittis,* with him *James P. Coho, Herbert W. Yanowitz, Thomas D. McBride,* and *Wolf, Block, Schorr and Solis-Cohen,* for appellant.

*W. Hensel Brown,* with him *Brown & Zimmerman,* for appellees.

OPINION BY MR. JUSTICE O'BRIEN, March 17, 1964:

Plaintiff-appellant, Sol Hoffman, trading and doing business as Tri-State Music Company, appeals from a final decree in equity, dismissing his complaint,

which sought to enforce a restrictive covenant against appellees, Harold Rittenhouse and his present employer, Independent Music Company. Harold Rittenhouse had been employed by Albert Rosman, doing business as Penn State Music Company, for many years, as manager of the business engaged in distributing coin-operated music machines and coin-operated amusement devices. Appellant acquired the Penn State Music Company, including music machines, amusement devices, good will and rights in many locations in which the equipment had been placed.

On May 13, 1960, when Tri-State acquired Penn State, Harold Rittenhouse, Victor Rittenhouse (not a party herein), Sol Hoffman, trading and doing business as Tri-State Music Company, and Albert S. Rosman, trading and doing business as Penn State Music Company, entered into a written agreement which, inter alia, provided as follows: "Now, THEREFORE, BE IT AGREED that for and in consideration of the sum of $1.00 and other valuable consideration [$1,000] paid to the said HAROLD RITTENHOUSE and VICTOR RITTENHOUSE, by ALBERT ROSMAN aforesaid, receipt whereof is hereby acknowledged by HAROLD RITTENHOUSE and VICTOR RITTENHOUSE, they, the said HAROLD RITTENHOUSE and VICTOR RITTENHOUSE, do hereby agree and stipulate that for and during the period of five years from the date of the execution of this contract that they will not solicit any of the aforesaid business sites conveyed by PENN STATE MUSIC COMPANY to the TRI-STATE MUSIC COMPANY or any of the aforesaid sites now serviced by TRI-STATE MUSIC COMPANY with commercial music coin operated music machines or coin operated amusement devices so long as the aforesaid sites are so supplied and serviced by either of the aforesaid companies directly or indirectly for themselves, for any employers or any employees or any associates of any kind including now existing or to be formed. This prohibition

against soliciting however, shall not[1] be limited to the soliciting of the aforesaid sites as locations for commercial music coin operated music machines or coin operated amusement divices [sic] and shall not be meant to limit solicitation of the aforesaid places for any other category of sales or services."

Harold Rittenhouse became employed by Independent Music Company, the other appellee, a few weeks after the formation of that Corporation by Pryor Neuber, sometime in March, 1961. Harold Rittenhouse owned no stock or interest in the Independent Music Company. All the stock of the corporation was owned by Mr. and Mrs. Pryor Neuber. The Independent Music Company is engaged in the distribution of coin operated music machines and coin operated amusement devices and is engaged in the same type of business as appellant and is in competition with Tri-State Music Company.

The questions before the chancellor were (1) the construction of the contract, and (2) whether the defendants violated the agreement. The chancellor, in substance, found that the agreement containing the restrictive covenant applied only to the solicitation of business sites listed in the agreement as those having done business with Penn State Music Company, for which Harold Rittenhouse had formerly worked, and which sites he, under the agreement, was restricted from soliciting. The chancellor found as a fact that there was no violation of the agreement by the defendants, Rittenhouse and the Independent Music Company, and dismissed the complaint. Appellant filed exceptions to the adjudication, which were dismissed by the court en banc; this appeal followed.

---

[1] The word "not" obviously was not intended to appear, even though it does appear in the contract appended to the complaint as an exhibit.

It is well established that a chancellor's findings of fact, approved by a court en banc, have all the force and effect of a jury's verdict if they are supported by adequate evidence and ordinarily will not be disturbed on appeal; however, the chancellor's conclusions, whether of law or ultimate fact, are no more than his reasoning from the underlying facts and are reviewable. *Rubin v. Lustro Tile Prod. Corp.*, 411 Pa. 549, 192 A. 2d 731 (1963), and cases cited therein.

The restrictive covenant in the agreement is a limited one, limited to the solicitation of sites previously acquired and as existing at the date of the agreement. It does not prohibit competition nor is it an agreement to refrain from competing with the appellant for any period or in any area. The restriction is limited to solicitation of enumerated business sites. Appellee-Rittenhouse is a party to the agreement but appellee-Independent Music Company is not a party to the agreement. The undisputed evidence revealed that at the time Harold Rittenhouse became employed by Independent Music Company, Pryor Neuber, the President and sole owner, with his wife, of all of the stock of Independent, discussed the contract and particularly the restrictive covenant and instructed Harold Rittenhouse that he was not to solicit any of the sites mentioned in the agreement. The examination of the agreement naturally revealed the sites being serviced at the time by Tri-State and its predecessor, Penn State, and the occupants of those business sites, or many of them, were solicited by a person under the direction and instruction of Pryor Neuber. The list having been available to him, he did use it for the purpose of solicitation. The evidence reveals, and the chancellor so found, that Harold Rittenhouse was not a party to this action and did not participate in the solicitation in any way, and in fact scrupulously avoided any conduct proscribed by the restrictive covenant. Harold Rittenhouse's work

with Independent was to service the machines and make collections. Some former customers of Penn State did call Harold Rittenhouse to install the equipment of Independent. The evidence revealed that these calls were unsolicited by Rittenhouse and no overtures were made by him to the people calling for the equipment, directly or indirectly.

Appellant's contention in this appeal, in respect to Harold Rittenhouse, is that he, Rittenhouse, turned over the list of sites to a fellow employee of his new corporate employer, and Rittenhouse installed and serviced, at these locations, equipment of the corporation which now employs him. There is no evidence that Rittenhouse turned over the list to a fellow employee. The evidence reveals that the list in the contract was turned over to an employee of the corporation by its president. There was no evidence that Rittenhouse either directly or indirectly participated in the solicitation of any locations on the list. He did, however, after changes, for various reasons, in some of the locations of Tri-State, install and service the equipment of Independent Music Company. This work was not proscribed by the restrictive covenant not to solicit. He was free to accept employment with a competitor and to do all things in the furtherance of a competitor's business, with the exception of solicitation, either directly or indirectly, and the record reveals no violation of this agreement by any conduct of Rittenhouse.

Appellant relies heavily on *Morgan's Home Equipment Corp. v. Martucci*, 390 Pa. 618, 136 A. 2d 838 (1957), as authority to sustain his averment of improper conduct, both on the part of the corporate appellee and the individual appellee. The *Morgan* case is not apposite to the instant case. In this case, we are concerned with 42 locations in and about the City of Lancaster which were business establishments open

to the public, with equipment of appellant open to the public and in public view. The list of these sites was not a confidential one and was prepared and attached to the agreement for the purpose of specifically naming the locations which the appellee Rittenhouse could not solicit. There were no trade secrets involved and no intent on the part of anyone to deceive. There was an open competition situation with only one restriction covered by the restrictive covenant, and that was that the former employee could not solicit any of the customers whose names were on the list prepared for the purpose of stating the locations which the former employee could not solicit.

There was no contractual arrangement between Tri-State and Independent, and since there was no confidential status between Rittenhouse and Tri-State, except the limited restrictive covenant, there was nothing to prevent Independent from competing with Tri-State. This is far different from the conditions in *Morgan,* supra, where a former employee launched on a deliberate attempt to deceive the customers of Morgan, armed with confidential information in the nature of customer lists and other trade information, and where some of Morgan's former employees, in violation of their agreement with Morgan to refrain from competing for a time within a certain area, did so compete.

Under the circumstances herein, appellees have breached no agreement or rule of law which would give rise to liability.

Decree affirmed. Costs to be borne by appellant.

Mr. Justice COHEN dissents.