## Great A. & P. Tea Co., Appellant, *v.* Bailey.

Argued October 4, 1965. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*George J. Barco*, with him *Yolanda G. Barco*, and *Barco and Barco*, and *Humes and Kiebort*, for appellant.

*Peter E. Blystone,* with him *Eckels, Blystone, Fuller & Kinnunen,* for appellees.

*F. Joseph Thomas,* for intervening defendant.

OPINION BY MR. JUSTICE EAGEN, May 26, 1966:

This is an action in equity seeking injunctive relief. For the purpose of this appeal, the facts may be briefly summarized as follows:

In 1954, Robert M. Bailey and Elizabeth S., his wife, were the record owners of farm land in Crawford County, Pennsylvania, on which they proposed to develop a shopping center. At that time, the tract was cut in two by a public highway known as U.S. Routes, Nos. 6, 19 and 322.

On November 23, 1954, the Baileys entered into a written lease with the Great Atlantic and Pacific Tea Company, Inc. (A. & P.), whereby a certain specifically described portion of the land on the north side of the highway was leased to A. & P. for the operation of a food market in a building to be constructed thereon with accompanying parking facilities.

The lease, which was duly recorded, contained, inter alia, the following provision with which we are here particularly concerned: "If, as and when the Lessors develop the adjoining property for business purposes, it is understood that the parking area of 107,524 square feet will be used in common with the parking to be furnished by the Lessors, but at no time shall the ratio of the total parking area to Lessee's floor area be less than five to one. It is further understood and agreed between the Lessors and Lessee hereof that no other supermarket, grocery, meat or vegetable market will be permitted to occupy space on the adjacent property owned by the Lessors during the term of this lease or the renewals herein granted. The aforementioned property shall be known as South Park Avenue Extension, Meadville, Pennsylvania."

On July 1, 1957, Baileys entered into a lease with Quality Markets, Inc. (Quality) for a store building to be constructed on a piece of land abutting the original tract owned by them and located to the north thereof.[1] As of that date, the Baileys did not own this particular land, but title thereto (a piece approximately 250 feet wide) was acquired on September 19, 1962, in the name of a corporation formed and solely owned by them, known as South Park Plaza, Inc. (Plaza). This lease with Quality also contained a restrictive covenant prohibiting occupancy of any part of Park Avenue Plaza[2] by any other supermarket except those of Quality and A. & P.

On August 31, 1961, Baileys conveyed to Plaza title to the original tract owned by them, which included the land under lease to A. & P. On October 11, 1961, the Baileys assigned their lease with A. & P. to Plaza. On October 12, 1961, this lease was renewed for an additional term of five years, with options to further renew. The restrictive covenant was incorporated therein by reference.

On August 27, 1963, Plaza purchased and acquired title to an additional piece of land, approximately 250 feet in width, which abutted and was located immediately north of the land acquired in September, 1962. On April 13, 1964, Plaza leased a portion of this most recently acquired land to Super Duper, Inc. (Super Duper) to be used for the erection and operation of a food market. This lease was subsequently assigned to S. M. Flickinger Company, Inc.

This action followed to enjoin the Baileys and Plaza from permitting the use of the land by Super Duper, or others for a food market. Quality and Super Duper

---

[1] For reasons not pertinent here, this building was never constructed.

[2] This is the name under which the shopping center was then known.

were permitted to intervene. After hearing, the chancellor entered an adjudication and decree nisi in favor of the Baileys and Plaza, the original defendants. The decree was later made final. A. & P. appealed.

It is the contention of A. & P. that the original tract owned by the Baileys and the additional lands subsequently acquired in the name of Plaza form one integrated shopping center, and that the restrictive covenant in its lease precludes the Baileys and Plaza from leasing any portion thereof for food market purposes during the term of its lease. On the other hand, the appellees maintain that the land leased to Super Duper, in which neither the Baileys nor Plaza had any interest or title on the dates the A. & P. lease was originally executed and later renewed, is not subject to the restriction.

It is a general rule of contract interpretation that the intention of the parties at the time the contract is entered into governs: *Heidt v. Aughenbaugh Coal Co.,* 406 Pa. 188, 176 A. 2d 400 (1962). This same rule also holds true in the interpretation of restrictive covenants: *Baederwood, Inc. v. Moyer,* 370 Pa. 35, 87 A. 2d 246 (1952), and *McCandless v. Burns,* 377 Pa. 18, 104 A. 2d 123 (1954). However, in Pennsylvania, there is an important difference in the rule of interpretation as applied to restrictive covenants on the use of land. It is this. Land use restrictions are not favored in the law, are strictly construed, and nothing will be deemed a violation of such a restriction that is not in plain disregard of its express words: *Jones v. Park Lane For Convalescents,* 384 Pa. 268, 120 A. 2d 535 (1956); *Sandyford Pk. C. Assn. v. Lunnemann,* 396 Pa. 537, 152 A. 2d 898 (1959); *Siciliano v. Misler,* 399 Pa. 406, 160 A. 2d 422 (1960); and, *Witt v. Steinwehr Dev. Corp.,* 400 Pa. 609, 162 A. 2d 191 (1960). Also, as stated by Mr. Chief Justice STERN in the first cited case, at 272, in reference to land use restrictions: "...

[T]here are no implied rights arising from a restriction which the courts will recognize; that a restriction is not to be extended or enlarged by implication; that every restriction will be construed most strictly against the grantor and every doubt and ambiguity in its language resolved in favor of the owner."

It is, therefore, established beyond argument that in order for A. & P. to prevail, the restrictive covenant involved must by its expressed terms clearly indicate that the parties intended it to extend to and include after-acquired land. We cannot reach this conclusion. To rule that such is included would read into the covenant something that is just not there. It would enlarge and extend the restriction by implication which has been proscribed by decisions of this Court for many years. Further, even if we assume that an ambiguity exists, it has long been the law that the ambiguity in a restrictive covenant must be construed against the one to be benefited by the restriction. See, *Food Fair Stores, Inc. v. Kline,* 396 Pa. 397, 152 A. 2d 661 (1959).

In support of its position that the parties intended to include after-required lands within the restriction, A. & P. emphasizes two parts of the covenant: the use of the words therein, "if, as and when the lessors develop the *adjoining* property for business purposes," and, "no other supermarket . . . will be permitted to occupy space on the *adjacent* property owned by the Lessors *during the term of this lease or the renewals herein granted."* (Our emphasis throughout.) It argues that this language lends itself to no other construction but that after-acquired lands were intended to be included.

As to the latter portion of the above recited language, A. & P. argues that since the covenant could not possibly extend beyond the term of the lease, or its granted renewals, and the covenant specifically speaks of running during the term of the lease, or its granted

renewals, it must mean and deal with all lands owned and acquired during that period. This argument overlooks the fact that the parties could have stipulated a shorter period for the restriction to remain in force, and that a specific time limitation on the covenant was, therefore, necessary. We do not construe it to relate to, or to intend, what A. & P. asserts.

Nor are we persuaded that the words "adjoining" or "adjacent" connote what A. & P. urges.[3] As noted before, at the time its lease was consummated, the Baileys owned land located on the southerly side of the highway, and separated thereby from that portion of the tract which included the land leased to A. & P. This has since been developed, at least in part, for other business enterprises. It is reasonable to conclude that by the use of the words "adjoining" and "adjacent", the parties intended to include this land within the restriction. At the very least, an ambiguity exists and, in such a situation, it must be resolved against A. & P. See, *Kessler v. Lower Merion Township School District*, 346 Pa. 305, 30 A. 2d 117 (1943), and *Witt v. Steinwehr Dev. Corp.*, supra.

A. & P. also urges that the rule of strict construction applied to land use restrictions should be modified, in view of present day needs and practices affecting land holding and development. We find no convincing reason why this long established rule should be modified. If the parties intended to include after-acquired land within the restriction, the lease agreement should have said so.

It may also be argued that the contract involved should be construed as one in restraint of trade and, therefore, more liberally interpreted than one dealing with a restrictive covenant on land use. We cannot

---

[3] Webster's New International Dictionary (3d ed. 1961), defines "adjacent" as meaning: "Not distant or far off: nearby but not touching".

comprehend how this would enhance the position of the appellant. Such contracts are no more favored in the law than contracts restricting the use of land.

Decree affirmed. Each party to pay own costs.

Mr. Justice COHEN concurs in the result.

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I am unable to agree with the majority's unreasonably narrow construction of the restrictive covenant presently in dispute. In my view, the only reasonable construction of the covenant on this record is that by the use of the term "adjacent property", appellant, A & P, sought and appellees agreed to bind any land which was assimilated into the shopping center "during the term of [A&P's] lease or . . . [its] renewals." The failure of the majority to give effect to this restriction improperly deprives A & P of the benefit of a contractual right for which it bargained and is entitled to have fairly enforced.

The record reveals that in November 1954, defendant-appellees were record owners of certain unimproved real estate located in Vernon Township, Crawford County, on which they proposed to develop a shopping center. As the first step in this development, they entered into an agreement with A & P for the lease of a supermarket to be constructed at the site of the proposed center. The lease agreement contained, inter alia, the covenant here in dispute which provided: "It is . . . understood and agreed between the Lessors and Lessee . . . that no other supermarket, grocery, meat or vegetable market will be permitted to occupy space on the adjacent property owned by the Lessors during the term of this lease or the renewals herein granted."

Until 1957, appellant's supermarket was the sole mercantile establishment in the development. Thereafter, other tenants were obtained and by 1962 the center had expanded to the point that the plot of land

owned by appellees at the time the lease with A & P was executed had been fully utilized. Desiring to enlarge the shopping center, appellees purchased two contiguous tracts of land lying directly to the north of the center. On April 3, 1964, they executed a lease for a portion of the newly acquired tract of land with Super Duper, Inc., for the operation of a supermarket. It is this lease and the right of appellees to enter into it in light of the restrictive covenant contained in the A & P agreement which is the source of the present litigation.

In urging that the lease entered into by appellees with Super Duper, Inc., was in breach of the 1954 agreement of the parties, A & P relies on the covenant contained therein that defendant-appellees would not permit a competing supermarket "to occupy space on the adjacent property owned by . . . [defendant-appellees] during the term of this lease or the renewals herein granted."

Defendant-appellees, however, contend that the restrictive covenant does not extend to property acquired subsequent to the execution of the lease agreement with A & P. It is their position that the term "owned" was inserted following the phrase "adjacent property" in order to embody the intention of the parties that the covenant encompass only property held by defendant-appellees at the time the lease agreement was executed.

A & P on the other hand, asserts that the term "owned" was employed, not in a restrictive sense, but merely to describe the nature of defendant-appellees' relationship to the property sought to be restricted, and, therefore, should be construed to apply to subsequently acquired property in order to give effect to the purpose for which the covenant was included.

While the majority recognizes the basic principle that the intention of the parties must govern the reso-

lution of this dispute,[1] it applies a rule of construction which precludes the parties from establishing their true intent and deprives A & P of the benefit of its bargain with defendant-appellees. I am unable to agree with the approach taken by the majority. In my view, there is no justification for permitting constructional guides to obscure the realities of modern commercial life and to defeat the purposes of economic bargaining.

It should be noted that we are not here faced with a challenge to the *validity* of the covenant. It is recognized and accepted that such covenants are valid and enforceable in this Commonwealth so long as they do not result in an unreasonable restraint of trade. See *Hoffman v. Rittenhouse*, 413 Pa. 587, 198 A. 2d 543 (1964); *Cleaver v. Lenhart*, 182 Pa. 285, 37 Atl. 811 (1897). There is no contention or suggestion that the present covenant, even if interpreted as urged by A & P, would work such an unreasonable restraint; the present restriction cannot be said to be greater than is required for the protection of the one for whose benefit it was imposed or to cause an undue hardship upon the person restricted. See Restatement, Contracts, §515 (1932); cf. *Harris Calorific Co. v. Marra*, 345 Pa. 464, 29 A. 2d 64 (1942). Thus, the sole issue before this Court is whether the covenant was intended by the parties and should be construed to bind after-acquired property adjacent to and made part of the shopping center.

In considering the proper approach to the construction of a restrictive covenant in a commercial context,

---

[1] The guiding principle of contract interpretation that the intention of the parties governs, *Heidt v. Aughenbaugh Coal Co.*, 406 Pa. 188, 176 A. 2d 400 (1962), is equally applicable to restrictive covenants. *Parker v. Hough*, 420 Pa. 7, 215 A. 2d 667 (1966); *McCandless v. Burns*, 377 Pa. 18, 104 A. 2d 123 (1954); *Baederwood, Inc. v. Moyer*, 370 Pa. 35, 87 A. 2d 246 (1952).

it is increasingly recognized that "parties are entitled to a degree of freedom in contracting to protect their own economic interests and that [the] controlled development of a given business center may be desirable. . . ."[2]  In *Cragmere Holding Corp. v. Socony-Mobil Oil Co.,* 65 N.J. Super. 322, 167 A. 2d 825 (1961), the issue, as here, was the applicability of a restrictive covenant to after-acquired property.  In refusing to permit the rule of strict construction to defeat the intent of the parties and in holding the covenant applicable to property thus acquired, the court stated, "the rule of strict construction is counterbalanced . . . by an evolving principle to the effect that covenants to refrain from competition, or to refrain from leasing to a competitor, if sufficiently reasonable in scope to avoid being labeled in restraint of trade, will be *realistically* construed in furtherance of their obvious purpose." Id. at 326, 167 A. 2d at 827. (Emphasis supplied.)[3]

---

[2] Note, Restrictive Covenants in Shopping Center Leases, 34 N.Y.U. L. Rev. 940 (1959). This note reports that a study by the publication "Chain Store Age" in May of 1958 revealed that 40% of the shopping center leases abstracted contained restrictive covenants. Id. at 940 n.1.

[3] In *Cragmere*, a landlord leased premises for use as a gasoline station, and covenanted (with certain specific exceptions not here relevant) not to lease to a competitor of his tenant within 1000 feet of the leased premises. Approximately a year later, the lessor acquired additional real estate within the proscribed area.  The court rejected his contention that the covenant should not be construed to bind after-acquired property, stating that the language of the lease should be read so as to attribute to the parties a rational meaning, consonant with their apparent purpose, and that "the crucial feature of this covenant is its applicability 'during the term of this lease or any renewal or extention thereof.' . . . Defendant [lessee] was seeking and, by virtue of the covenant, obtained protection against competition, direct or indirect, from its landlord." *Cragmere Holding Corp. v. Socony-Mobil Oil Co.,* 65 N.J. Super. 322, 325, 167 A. 2d 825, 826 (1961).

The approach taken by the court in *Cragmere* is in line with the weight of modern authority[4] and, I believe, represents a sounder approach to the solution of the instant case than the uncritical application of the doctrine of strict construction to defeat the obvious purpose for which the covenant was included in the lease agreement between these parties.[5]

In ascertaining the intention of the parties, the terms of the restriction should be interpreted in light

---

[4] See, e.g., *Carter v. Adler*, 138 Cal. App. 2d 63, 291 P. 2d 111 (D.Ct. App. 1955) ; *Vaughan v. General Outdoor Advertising Co.*, 352 S.W. 2d 562 (Ky. 1961) ; *Slice v. Carozza Properties, Inc.*, 215 Md. 357, 137 A. 2d 687 (1958) ; *Strates v. Keniry*, 231 Mass. 426, 121 N.E. 151 (1918) ; *Parker v. Lewis Grocer Co.*, 153 So. 2d 261 (Miss. 1963) ; *Daitch Crystal Dairies, Inc. v. Neisloss*, 16 Misc. 2d 504, aff'd, 8 N.Y. 2d 723, 201 N.Y.S. 2d 101, 167 N.E. 2d 643 (1960) ; *Topol v. Smoleroff Development Corp.*, 264 App. Div. 164, 34 N.Y.S. 2d 653 (App. Div. 1942) ; *South Buffalo Stores, Inc. v. W. T. Grant Co.*, 153 Misc. 76, 274 N.Y.S. 549, aff'd as modified, 248 App. Div. 668, 289 N.Y.S. 918, aff'd without opinion, 273 N.Y. 660, 8 N.E. 2d 335 1937) ; *Renee Cleaners, Inc. v. Good Deal Super Markets of N.J. Inc.*, 89 N.J. Super. 186, 214 A. 2d 437 (App. Div. 1965) ; *Cragmere Holding Co. v. Socony-Mobil Oil Co.*, 65 N.J. Super. 322, 167 A. 2d 825 (1961) ; *Shaft v. Carey*, 107 Wisc. 273, 83 N.W. 288 (1900).

[5] The majority relies upon that line of cases requiring restrictions contained in deeds to be strictly construed. These cases are presently inapposite. The historical and logical bases for construing a restrictive covenant contained in a deed strictly against the grantor are not compelling in the construction of a covenant not to compete embodied in a lease agreement. In the latter context, the doctrines developed to preclude unreasonable restraint of trade function to protect against undesirable restrictions on land use by reason of such covenants.

The majority also refers to the decisions in *Siciliano v. Misler*, 399 Pa. 406, 160 A. 2d 422 (1960), and *Food Fair Stores, Inc. v. Kline*, 396 Pa. 397, 152 A. 2d 661 (1959), both cases involving the construction of covenants restricting competition. However, the result reached in both cases may be supported under traditional principles of contract interpretation without reference to the doctrine of strict construction.

of the apparent object or purpose of the covenant and the conditions existing at the time the lease agreement was executed. Cf. *Parker v. Hough*, 420 Pa. 7, 12-13, 215 A. 2d 667, 670 (1966); *McCandless v. Burns*, 377 Pa. 18, 19 104 A. 2d 123, 126 (1954); *Baederwood, Inc. v. Moyer*, 370 Pa. 35, 40-41, 87 A. 2d 246, 248 (1952).

There is no dispute as to the objective the parties sought to achieve by the inclusion of the restrictive covenant in the lease agreement. A & P sought assurance that its expenditures in moving into and promoting a new and untried market area would not be jeopardized by competition from another lessee of defendant-appellees. There is nothing in the record to suggest that such assurances were not intended to reach after-acquired property assimilated into the shopping center.

Although there are no cases directly on point in this Commonwealth, other jurisdictions, in determining the applicability of a covenant contained in a shopping center lease to after-acquired property made part of a shopping center, have held that the apparent purpose of the parties would be defeated were the covenant not to apply to such property. In *Carter v. Adler*, 138 Cal. App. 2d 63, 291 P. 2d 111 (D. Ct. App. 1955), a case presenting an analogous problem, the court recognized that were the restrictive covenant not to bind after-acquired property incorporated into a shopping center, the landlord could by devious means circumvent his obligation to his lessee. Thus, although no explicit reference to after-acquired property was contained in the covenant between the parties, the restriction was found to extend to such property by implication: "A restrictive covenant, such as the grant of the exclusive mercantile rights . . . is not merely ornamental words, inserted to please the eye. It is a living expression of the grantor incorporated in a lease as a

consideration for the lessee's faithful performance. Concomitant with such a covenant is the implied obligation of the lessor not to cancel the covenant or derogate from its force by so using his adjoining property as substantially to impair the lessee's enjoyment of the leased premises." *Carter v. Adler,* supra at 70, 291 P. 2d at 115.[6]

On this record it is clear that the apparent purpose and object of the parties would be defeated were the covenant interpreted not to bind adjacent property acquired by the defendant-lessees after the execution of the lease with A & P. The lessee, by means of the restrictive covenant, sought protection against the possibility that defendant-appellees would lease adjacent property to a competitor. The majority here permits the defendant-appellees to evade the purpose and object of the present covenant by the purchase and incorporation of property into the shopping center, thus depriving A & P of the benefit of a contractual right bargained for and relied upon.

In 1954, when the parties entered into their lease agreement, the site of the present commercial center was undeveloped land. A & P abandoned an established location in the nearby town of Meadville, and expended large sums of money to move into and to promote this untried market area. For approximately two years, it was the only commercial tenant on the site of the present shopping center.

---

[6] In *Carter*, the lease agreement contained a covenant that the lessee would have "the exclusive rights on Grocery, Delicatessen, Meats, Produce, Fish and Poultry in Valley Market Town . . . ." The landlord (who had purchased the shopping center from the original owner) acquired a contiguous tract of land for the purpose of expanding the center. In a declaratory judgment, the court held that the covenant bound after-acquired property made part of the shopping center. It should be noted that the restrictive covenant in the present case was also made in reference to a particular commercial development known as "a shopping center."

While no definite and precise plan existed at the time the lease was executed, both parties envisioned the development of the site as a shopping center.[7] Because of the uncertain nature and direction of the future expansion, it is unlikely that either party was concerned with the precise status of land ownership when the covenant was given; rather, it is more reasonable to infer from the circumstances that their primary interest was in meeting A & P's desire for assurance against competition in the event of future development of the site. It is from just such future development that the present economic threat emanates.

Given the circumstances surrounding the execution of the lease, the subject matter of the covenant, and the apparent object and purposes of the parties, I am led to the inevitable conclusion that the restriction was intended to preclude defendant-appellees from threatening the economic position of A & P by permitting a competitor to lease adjacent property. Since the apparent object of the parties was to prevent this type of competition, it is clear that the point in time at which defendant-appellees acquired the site sought to be leased to a competitor is irrelevant; the resulting competition would be equally harmful to the leasehold interest of A & P whether such property was owned prior to or acquired after the execution of its lease agreement.[8]

---

[7] The court below found that all the covenants and conditions of the lease agreements were made in contemplation of the eventual development of the site as a shopping center.

[8] It should also be noted that the parties themselves appear to have acted on the premise that the covenant bound the property here involved. In 1956, the defendant-appellees sought to obtain a release from the restriction of the covenant for the purpose of leasing after-acquired adjacent property to Quality Markets, Inc. The release was conditionally obtained, but is presently inapplicable since the court below found that the conditions precedent to its effectiveness were not met. While I do not consider these

Absent evidence which would rebut the inference flowing from the circumstances here present, I can only conclude that the present covenant binds after-acquired property adjacent to and made part of defendant-appellees' shopping center.

Accordingly, I dissent.

Mr. Justice MUSMANNO and Mr. Justice O'BRIEN join in this dissenting opinion.

---

circumstances to be controlling, courts, in order to determine the intent of the parties, may take into account subsequent acts tending to show the construction which the parties themselves placed upon the contract. See *Beedy v. Nypano Railroad Co.*, 250 Pa. 51, 95 Atl. 343 (1915).