## Grant Drugs Inc. v. Williams

*Robert D. Segal,* for plaintiff.
*Jeffrey S. Saltz,* for defendant.

GAFNI, *J.,* December 1, 1989 — This case involves the granting of a preliminary injunction to prevent defendants, Thomas and Mary Williams and Lansford Corporation, from leasing premises in Grant Shopping Center to Rite-Aid or any other drugstore or patent medicine store. Plaintiff, Grant Drugs Inc., a current tenant, bases its claim on the restrictive clause in its lease with Thomas and Mary Williams.

The center was constructed in 1964 and consisted of a supermarket and eight smaller retail stores. At the center's inception there was a drugstore owned by Gerson Stein with a lease provision which stated that the store "shall be the only such drugstore and/or patent medicine store in this center." As originally planned, in 1968, eight stores were added to the center. In 1969, Fairway Pharmacy of Andalusia Inc., assumed ownership of Stein's drugstore with a new lease retaining the above restrictive covenant. In early 1978, Grant became assignee of the Fairway lease before entering into a new lease in July of the same year. Presently, plaintiff is operating under the July 1978 lease.[1] The current lease of plaintiff retains the same restrictive clause as the Stein and Fairway leases.

---

1. At trial there was a discrepancy as to whether the lease had been renewed; however, it was agreed that the 1978 lease included an option for plaintiff to renew for two consecutive five year terms.

The occurrences which gave rise to this suit began in 1987. At that time, the owners of the center, defendants Thomas and Mary Williams, began to develop a 12-store addition to the center on a vacant parcel next to the supermarket. The construction of the addition was completed in early 1989. Defendants began to negotiate with Rite-Aid as a prospective tenant for one of the new stores. Signs announcing that Rite-Aid was "coming soon" were placed in the store's window. Grant, in an effort to prevent the execution of a lease between defendants and Rite-Aid, any drugstore or patent medicine store, brought the within action.

The issue before this court is whether, based on the restrictive clause in Grant's lease, defendants should be enjoined from displaying any sign regarding the arrival of any drug or patent medicine store, as well as from entering into a lease with Rite-Aid or any other drug or patent medicine store. For the reasons set forth below, this court granted plaintiff's petition for a preliminary injunction prohibiting the above actions of defendant.

## DISCUSSION

A preliminary injunction may be granted only if certain standards are met: (1) the rights of plaintiff are clear; (2) there is an urgent necessity to avoid injury which cannot be compensated for by damages; (3) greater injury will be done by refusing the preliminary injunction than by granting it. *Independent State Store Union v. Pennsylvania Liquor Control Board,* 495 Pa. 145, 157, 432 A.2d 1375, 1381 (1981).

## The Rights of the Plaintiff Are Clear[2]

To assess plaintiff's right to a preliminary injunction, the law on restrictive covenants in a lease must be examined. Restrictive covenants are valid and enforceable in Pennsylvania so long as they do not result in an unreasonable restraint of trade. *Hoffman v. Rittenhouse,* 413 Pa. 587, 198 A.2d 543 (1984). However, they are not favored and are strictly construed against the party seeking to enforce them.

"It is a general rule of contract interpretation that the intention of the parties at the time the contract is entered into governs: *Heidt v. Aughenbaugh Coal Co.,* 406 Pa. 188, 176 A.2d 400 (1962). This same rule also holds true in the interpretation of restrictive covenants: *Baederwood Inc. v. Moyer,* 370 Pa. 35, 87 A.2d 246 (1952) and *McCandless v. Burns,* 377 Pa. 18, 104 A.2d 123 (1954). However, *in Pennsylvania, . . . [l]and use restrictions are not favored in the law, are strictly construed, and nothing will be deemed a violation of such a restriction that is not in plain disregard of its express words: . . . " Great Atlantic and Pacific Tea Company v. Bailey,* 421 Pa. 540, 544, 220 A.2d 1, 2-3 (1966). (citations omitted; emphasis supplied)

Defendants argue that based on Pennsylvania's strict construction of restrictive covenants on land, plaintiff's petition must be denied. In support of this argument, defendant submits that the restrictive covenant does not *expressly* apply to the additional 12 stores which became part of the center in early

---

2. The court focuses on this issue because defendants, in their brief and at trial, argue primarily against the contention that the rights of plaintiff are clear, and do not put forth any additional defenses.

1989, but is limited to the center as it existed on the date of the signing of the lease.

While it is true that the lease did not specifically refer to the 12 new stores, this court found that the covenant was not ambiguous when applied to these stores. The covenant specifically states that Grant Drugs shall be the only drugstore and/or patent medicine store in the *Grant and Academy Shopping Center*. Lease at paragraph 3. (emphasis supplied)[3] The name of the center is being retained and applies to all of the stores in the expanded center. Moreover, the additional stores share the same parking lot and entranceways from the street, and were built on a continuous line from the previously existing supermarket's wall. Further, due to the short length of the center, none of the new storefronts is more than a very short walk to plaintiff's store.

Finally, and no less persuasive, is defendants' reference to the extension as part of the original center. In a letter dated June 14, 1988, referring to the work as renovation and expansion to the center, defendants characterized the renovation and expansion program as "designed to create an updated, visually appealing shopping center which will contain approximately 10 additional retail tenants. . . . " This acknowledgment of defendant, referring to the addition as part of the center, reaffirms that references in plaintiff's lease to the "Grant and Academy Shopping Center" were, even in the minds of the defendant-landlords, applicable to all of the stores.

Defendant relies on *Great Atlantic and Pacific*

3. In addition to the words in paragraph 3 of the lease, paragraph 46 states, "[e]xcept so long as Grant Drugs Inc., operates a pharmacy in the shopping center located at Grant and Academy Avenues, Philadelphia, Pennsylvania, we agree not to dispense any drugs requiring the presence of a registered pharmacist."

*Tea Co. v. Bailey, supra,* (in which the restrictive covenant prohibiting any lease for a supermarket or grocery store on adjacent property was not violated when land adjacent to the center, not owned by the lessors at the time of the lease, was leased to another supermarket). The court (in a four-three decision) determined the issue to be whether "the restrictive covenant involved . . . indicate[s] that the parties intended it to extend to and include after-acquired land." The court found that the language in the lease, referring to "adjacent property owned by the lessor during the time of the lease" either referred to other land owned by the landlord, or was, at best, ambiguous and should be construed against the tenant party seeking to enforce the covenant. It is apparent, however, that the covenant would have been enforced as to the property already owned by the lessors. The instant case, however, does not deal with after-acquired property. It concerns an extension to an already existing center built on a vacant, undeveloped lot owned by defendants at the time of the original lease.[4]

Defendant further argues that since the addition to the center has a separate mortgage and is taxed separately by the City of Philadelphia, it should be deemed unrelated to the pre-existing center. This court finds this argument to be unpersuasive. How the city assesses taxes or how a mortgage is drawn cannot alter the rights of a tenant under its lease.

The intent of the parties is well expressed in the covenant. Grant Drugs, when entering into the lease, intended to safeguard its life savings and business by assuring that it would not be subject to

---

4. It should further be noted that in *Great Atlantic and Pacific Tea Co.* the addition was not even on the existing center, but on a separate and differently housed center.

competition of other drug or patent medicine stores within the same center. Although it was not possible to protect itself from competition down the street or around the corner, it was possible to protect itself from competition but a few storefronts away, which would share the same parking, entranceway, and presumably, benefits, which are attendant upon being a participant in a single shopping center.

Although there are no Pennsylvania cases factually similar to the instant case, courts in other jurisdictions have decided cases, with essentially the same facts, in conformity with the decision of this court. *Liza Danielle Inc. v. Jamko Inc.*, 408 So.2d 735 (Fla. 3d Dist. Ct. App. 1982), involved a covenant restricting retail shoe stores from "any other space in the warehouse . . . " The court found the intent of the lease to apply to Warehouse West and to the newly constructed Warehouse East. In affirming the lower court decision, the Court of Appeals considered the strict construction of covenants approach and found that even though it was not clear which standard the lower court applied, the construction reached was supported by the lease terms and competent testimony. *Id.* at 738. See also, *Slice v. Carozza Properties*, 215 Md. 357, 137 A.2d 687 (1958); *Belvedere Hotel Co. v. Williams*, 137 Md. 665, 113 Atl. 335 (1921); *Carter v. Adler*, 138 Cal. App. 2d 63, 291 P.2d 111 (1955).

For this court to accept defendant's contention that the parties intended to limit the covenant to the stores in existence and not to the Grant-Academy center as a whole, would be to change the words of the covenant, and supersede the expressed intent of the parties. Although defendants countered that the additional stores may not have been contemplated at the inception of the lease, this does not alter the intent of the parties to the covenant to keep plain-

tiff's investment protected and free from competition within the *Grant and Academy Shopping Center*. It is uncontested that Rite-Aid would be selling many of the same products as Grant, and it can be assumed that Rite-Aid would attract some of Grant's customers simply by its close proximity. It is exactly this foreseeable event which the parties considered when they contractually bargained for the covenant.

For the foregoing reasons, this court entered the preliminary injunction enjoining defendants from entering into a lease with Rite-Aid or any other drugstore or patent medicine store.